**UNITED STATES of America,
Plaintiff,**

v.

**Demarco Deon WILLIAMS, Defendant.**

No. 04–CR–167–HDC.

United States District Court,
N.D. Oklahoma.

Feb. 1, 2008.

Douglas A. Horn, Stephen Labadie Sewell, United States Attorney's Office, Tulsa, OK, for Plaintiff.

## ORDER

H. DALE COOK, Senior District Judge.

This matter is before the Court on remand from the Tenth Circuit Court of Appeals from issuance of its opinion on December 20, 2007, which reversed the conviction of the defendant DeMarco Deon Williams, vacated his sentence and directed that his case be dismissed for violation of the Speedy Trial Act of 1974 (the "Act"), 18 U.S.C. § 3161 *et seq.* The Tenth Circuit directed this Court to determine whether the case be dismissed with or without prejudice, by consideration of the following non-exclusive factors: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; (3) the impact of re-prosecution on the administration of the Act and on the administration of justice; and (4) prejudice to Mr. Williams. See, *United States v. Williams,* 511 F.3d 1044, 1059, citing 18 U.S.C. § 3162(a)(2) and *United States v. Taylor,* 487 U.S. 326, 334, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988).

### Factual Background

#### The Arrest

On July 27, 2004, after receiving information from a reliable confidential informant, Tulsa Police officers executed a Tulsa County Search Warrant for cocaine and firearms at Williams' residence located at 3811 South 128th East Avenue in Tulsa. During the search of the house the officers found two plastic baggies which contained 107.91 grams of crack cocaine, a set of digital scales, and a loaded Taurus .38 caliber revolver. Officers found a small quantity of marijuana from the search of Williams' vehicle parked in the garage. Officers read Williams his *Miranda* rights, which he voluntarily waived. Williams was transported to police headquarters north division where he confessed to ownership of the cocaine and the loaded firearm. Williams also confessed that he made his living trafficking in illegal drugs. On their agreement that Williams would cooperate with narcotics officers, Williams was released and instructed to return to police headquarters. A felony arrest warrant was subsequently issued by the state court on September 28, 2004, following Williams failure to return as agreed. On October 5, 2004, a Tulsa Police Officer observed Williams driving his vehicle in north Tulsa. Officers stopped Williams and arrested him on the outstanding warrant. During the search, officers found $3,410 in cash, a set of digital scales and 210.9 grams of crack cocaine. Williams was again *Mirandized.* He voluntarily waived his rights and again confessed to ownership of the crack cocaine.

On October 7, 2004, Williams was named in the subject four-count federal Indictment charging him with two counts of possession with intent to distribute 50 grams or more of cocaine base, one count of possession of a firearm in furtherance of drug trafficking, and one count of possession of a firearm after former conviction of a felony, and on October 19, 2004, Williams was arrested. A superseding indictment was issued on November 3, 2004.

#### The Record

On October 19, 2004, Williams was arraigned before a federal magistrate who appointed Dennis Caruso to represent Williams. Williams' case was set for jury trial on November 23, 2004.

Attorney Dennis Caruso was Williams' first appointed attorney. Attorney Caruso represented Mr. Williams for 27 days from October 19, 2004 until November 16, 2004, when Caruso filed a motion to withdraw. During his representation, attorney Caruso filed one motion to dismiss and three motions to suppress evidence. In his mo-

tion to withdraw, attorney Caruso stated that both he and Williams "believe a change of counsel is necessary in this case." Further, Caruso advised that the Federal Public Defender also "recommends a change in counsel under the circumstances of this case." [Dkt. # 19]. The Court was advised by Caruso that he withdrew because he and Williams had a total breakdown of communication. Attorney Caruso withdrew from representing Williams seven days prior to Williams' trial setting.

On November 19, 2004, the Federal Public Defender appointed attorney Steven Hightower to represent Williams. Mr. Hightower was Williams' second attorney. Attorney Hightower represented Williams for 5 days, until December 1, 2004, when he filed a motion to withdraw. A pretrial hearing was held just two days following Mr. Hightower's appearance in the case on November 22, 2004. At the hearing, AUSA Doug Horn advised of a possible conflict of interest in attorney Hightower's representation of Williams. Government advised that Williams was a target in the unsolved murder of a Tulsa minister named Necko Padillow. Attorney Hightower and Necko Padillow were long time family friends. (Transcript of Hearing dated November 22, 2004). Upon the Court's inquiry, Williams denied knowledge of the homicide and affirmed he wanted Mr. Hightower to represent him. Mr. Hightower requested a continuance. The Court suggested a two week continuance, but Mr. Hightower advised he needed sixty days to prepare for trial. Mr. Hightower's request was granted and the jury trial was reset for February 7, 2005, which was the closest jury docket allowing for the sixty day continuance.

In Hightower's December 1, 2004 motion to withdraw he advised that on November 23, 2004, Williams decided there was a conflict of interest and wanted Hightower removed from his case. [Dkt. # 25]. On December 14, 2004, Williams filed a *pro se* motion for ineffective assistance against attorney Hightower asserting conflict of interest referencing Mr. Hightower's long term relationship with Necko Padillow and his inability to represent him without "prejudice and conflict." [Dkt. # 27]. The Court entered an order on December 15, 2005, granting attorney Hightower's request to withdraw.

On December 17, 2004, the Federal Public Defender appointed attorney Stephen Knorr to represent Williams. Attorney Knorr was Williams' third attorney. Knorr represented Williams for 38 days, until he filed under seal a motion to withdraw on January 24, 2005, claiming a "serious conflict of interest." [Dkt. # 39].

During Mr. Knorr's representation, Williams filed a *pro se* motion to dismiss the charges challenging the legality of the search of his vehicle on October 4, 2004. On January 11, 2005, the Court entered an order denying four of Williams' pending motions challenging the legality of his arrest. Attorney Knorr's January 24, 2005 motion to withdraw advised that upon receipt of the discovery materials, he learned that Williams had given statements to Tulsa Police about two individuals that Knorr was presently representing on drug matters. Williams told him he wanted to cooperate with government and that he would provide information on other individuals that Mr. Knorr was representing, both in state and federal court. [Dkt. # 39]. On February 10, 2005, the Court conducted a hearing on Knorr's motion to withdraw and after verifying the conflict, the Court allowed attorney Knorr to withdraw. Government and the Court indicated to Mr. Williams that they were prepared to commence trial in four days, but based on the shown conflict of interest, Mr. Knorr's request to withdraw would be

granted. (Transcript of Hearing dated February 10, 2005). On February 14, 2005, Williams executed a waiver of speedy trial. Attorney Knorr withdrew from Williams' case four days prior to trial.

On February 25, 2005, the Federal Public Defender appointed attorney Richard White, Jr. to represent Williams. Attorney White was Williams' fourth attorney and represented Williams for 4 months, until June 13, 2005, when Williams filed a motion for ineffective assistance of counsel, seeking his removal. Williams' motion was filed two days prior to the scheduled pretrial hearing set for June 15, 2005.

On June 15, 2005, the Court held a hearing on Williams' motion. Attorney White advised that there was a complete breakdown in his ability to communicate with Williams and an inability to determine how to proceed with the case. White stated it was in Williams' best interest for the Court to appoint him a new counsel who might be able to effectively communicate with him. White advised that Williams refused to follow his professional advice, giving as an example that Williams insisted, among other demands, that a chemist be hired at government's expense to test whether the substance seized from his home was cocaine. Williams complained that attorney White had not helped him in any way, that he negotiated a 25 year prison term, claimed he did not have a case and had nothing to work with. (Transcript of Hearing dated June 15, 2005).

The Court was advised by AUSA Doug Horn that during attorney White's representation, White was focused on plea negotiations with Government, because Williams was otherwise facing mandatory life. The record shows that on March 10, 2005, Government conducted its Rule 11 conference with Williams. The government offered Williams a proposed written plea agreement on May 11, 2005. AUSA Horn advised the Court that he had "nu-

merous meetings with the defendant with Mr. White being present. I've probably had more contact with this defendant than most defendants I prosecute".... "Mr. White has done an excellent job as the defense attorney in this case." (Transcript of hearing dated June 15, 2005 at pp. 14–15). AUSA Horn stated further:

He negotiated a plea agreement out of me that I don't often give. The problem is Mr. Williams wanted a hard and fast guarantee as he was used to in state court. And I explained to him, Mr. White explained to him that that is not our ability, that's up to the court. We can make certain recommendations, but beyond that we can't do anything. And he would not take that as an answer and became belligerent, not only with Mr. White but with us, and its really nothing that Mr. White did at all.

(Transcript dated June 15, 2005, p. 15).

The Court admonished Williams to cooperate with his attorneys, and follow their professional advice. The record shows that during the plea negotiations, neither Government nor the defense moved to have the case reset for trial, and by inadvertence, the clerk neglected to place the case on the jury docket. Williams reasserted his request to have White removed from the case. The Court granted Williams' motion and allowed White to withdraw. On June 17, 2005, two days following the hearing, government served Williams an enhancement information, giving notice of intent to enhance his sentence to life imprisonment pursuant to 21 U.S.C. § 851(a)(1).

On June 17, 2005, the Federal Public Defender appointed Beverly Atteberry to represent Williams. On July 19, 2005, the Court entered a revised scheduling order, resetting Williams' jury trial to September 12, 2005. Attorney Atteberry represented Williams for 44 days, until August 1, 2004

when Williams sent a letter to chambers asserting ineffective assistance of counsel and notice of conflict of interest.

In his motion for ineffective assistance of counsel, Williams claimed that attorney Atteberry "is not competent to fully represent me and assist me with going forward with my case." Williams objected to Atteberry "setting" the September 12, 2005, trial date as not allowing her sufficient time to prepare for trial. Williams stated:

> The lawyers that are being appointed to my case take my life, situation & position as if it means nothing to them. Instead of talking to me they talk at me. I need the Court to hand pick me a lawyer who can adhere to my time senitive [sic] & delicate case. I cant get my lawyers to raise issues before the Court concerning my case. It seems as though its all rehearsed … First & foremost this is the immediate problem I have with Counselor Atteberry she has already set a trial date for me Sept 12, 2005 at 9:30 without first introducing herself and going over the plan. Not setting a date for pretrial and rushing me through the process…. I also raised the issue of the Affidavit & Search Warrant not being filed she told me it didn't matter…. I also would like to bring to the Courts attention that there's a conflict because the Government has questioned me about clients that shes representing and Mr. Richard White knew this when conversating with Ms. Atteberry while informing her on as to what has happened during his representation of the case.

Williams' letter to Chambers [filed Dkt. # 48].

On that same date, Williams filed a second *pro se* motion to dismiss challenging the validity of the search warrant issued on July 27, 2004. Williams *pro se* motion became the fifth motion to challenge the legality of Williams' arrest. On August 29, 2005, attorney Atteberry filed a motion to withdraw based on an "irreconcilable conflict of interest between a present client and Mr. Williams. Counsel was unaware of this conflict August 10, 2005." [Dkt. # 51]. The Court granted attorney Atteberry's motion to withdraw on September 8, 2005.

On September 8, 2005, government filed its proposed voir dire in an effort to move the case to trial. On September 8, 2005, attorney Randy Lynn entered his appearance. Attorney Lynn was Williams' sixth attorney and continues to present to represents Williams.

Upon entering his appearance, attorney Lynn filed the motion to dismiss on speedy trial grounds and, in the alternative, a request to continue the trial date. In his request for continuance, attorney Lynn states, "Mr. Williams asks the Court to take note that his counsel would concede, as the Government probably would, to an allegation by Mr. Williams of Ineffective Assistance of Counsel in going to trial with preparation period of four days." [Dkt. # 56]. On September 9, 2005, the Court continued the jury trial from September 12, 2005 to September 13, 2005.

On September 13, 2005 with the case called for trial, attorney Lynn motioned the Court to continue the trial for a month or two, stating "Well, I don't know that any of Mr. Williams' lawyers to date have been prepared for trial and I certainly am not." (Transcript of Hearing dated September 13, 2005) [Dkt. # 126]. The Court granted the continuance for one week, setting the trial for September 19, 2005. On September 15, 2005, attorney Lynn again filed for continuance of the trial date and later noted government's objection to any further delay.

On September 16, 2005, government filed its trial brief and proposed jury instructions, in an effort to move the case to

trial. Upon defendant's motion, the Court struck the trial date and set a hearing for September 21, 2005. At the hearing, attorney Lynn requested an additional 60 day continuance of the trial. The Court denied Lynn's request and set the trial to commence on October 24, 2005. In the intervening time, attorney Lynn filed sealed motions to hire at government's expense an investigator, a chemist, and a handwriting analyst. Those motions were granted. Attorney Lynn also filed for issuance of subpoenas duces tecum to a purported "employer" of Williams. This motion was also granted. Attorney Lynn's final sealed motion was directed to obtain employee files from the Tulsa Police Department. This motion was denied. Also prior to trial, attorney Lynn filed motions in limine, to suppress (challenging the admission of Williams' confession), for a James Hearing, for the identity of the confidential informant, and a final motion to suppress (that being, the sixth challenge to the legality of Williams' arrest).

On October 21, 2005, attorney Steve Lewis entered an appearance in the case as co-counsel. Attorney Lewis was Williams' seventh attorney. Attorney Lewis represented Williams for 4 days, withdrawing from the case at the conclusion of trial. Attorney Lewis' departing statement was "he had enough". See, Williams' Motion for Ineffective Assistance [Dkt. 114].

### The Conviction

Williams' jury trial commenced on October 24, 2005, with voir dire at 9:40 a.m. The government sponsored the testimony of four police officers, a forensics expert, and a federal agent. Government admitted the following exhibits: the cocaine, digital scales, firearm, ammunition, cash seized, notification of rights of waiver form, title to Williams's vehicle and Williams' written confession. The defendant did not call any witnesses nor sponsor any exhibits. On October 25, 2005, at 3:10 p.m., the jury returned a verdict of guilty as to each count charged. Following trial, Williams denied that he had former felony convictions and requested an evidentiary hearing to support the sentencing enhancements under § 851(a)(1). At the hearing the government proved the identity of Williams as the same person who was convicted of the felonies listed in the notice of enhancement. Williams offered no evidence to the contrary. The presentence report was prepared without objection by either government or defense counsel. On January 26, 2006, Williams was sentenced to a life sentence on Count One, 60 months on Count Two, 120 months on Count Three, and a life sentence on Count Four.

On February 23, 2005, Williams filed a motion for ineffective assistance against attorney Lynn, following Williams' conviction on all counts by a jury and his sentence to life imprisonment. Since Notice of Appeal had been filed of record, the Court deferred the motion to the Tenth Circuit.

### Discussion

Following an examination of the record, the Court enters the following findings and conclusions regarding the four nonexclusive factors to be considered in determining whether a dismissal for violation of the Speeding Trial Act in this case should be with or without prejudice.

#### Seriousness of the Offense

■ The Court finds that the crimes with which Williams has been charged are highly serious, involving possession, distribution and intent to distribute 318.81 grams of crack cocaine as well as the possession of a loaded firearm with back-up ammunition by a convicted felon. The Tenth Circuit has acknowledged that felony drug charges have been treated as serious offenses. See, *United States v. Saltz-*

*man,* 984 F.2d 1087, 1093 n. 8 (10th Cir. 1993).

Williams argues that the Court should consider the "degree of seriousness inherent to the offense" rather than whether the offense is serious. Williams' argument ignores the statutory mandate which expressly requires the Court to consider "the seriousness of the offense" not the "degree of seriousness inherent in the offense". See, 18 U.S.C. § 3162(a)(1). In *Saltzman,* the Tenth Circuit directed that "[i]f the court determines the offense committed by the defendant is serious, this factor weighs in favor of dismissing without prejudice." *Saltzman,* 984 F.2d at 1093.

Other facts that the Court finds relevant are as follows. Williams is a repeat drug offender and a danger to society. His presentence report indicates that he has been engaged in criminal activity since he was 13 years old. Williams has three prior state court felony drug convictions for which he served time, and a conviction for escape from failing to report to his supervising officer while on pre-parole conditional supervision. At the time of the instant offense, Williams was serving a suspended sentence issued in state court.

Williams qualifies for "Career Offender" status under federal law. See, 21 U.S.C. § 851(a)(1), and United States Sentencing Guidelines Manual § 4B1.1. Congress established the seriousness of the offense charged by the enactment of § 851 which mandates a life sentence for those defendants classified as career felons. Contrary to Williams' argument that he was voluntarily released by Tulsa Police following his arrest on July 27, 2004, the evidence is that Williams lured Tulsa Police Officers to release him on July 27, 2004, on the pretext that he would cooperate with narcotics officers. Instead, Williams deliberately eluded the criminal justice process and returned to trafficking illegal drugs.

The Court finds that the seriousness of the offense is a factor strongly weighing against the defendant.

### Facts and Circumstances Leading to Dismissal

■ In evaluating the facts and circumstances leading to the dismissal, the proper focus is "on the culpability of the delay-producing conduct." *Saltzman,* 984 F.2d at 1093. The Tenth Circuit instructs, "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *Id.* In Williams' case, there is no bad faith conduct on the part of government. The defendant so much as concedes this fact in his pleading. The delay in bringing this case to trial was primarily the result of defendant filing repeated claims of ineffective assistance of counsel against skilled and competent defense attorneys appointed by the Federal Public Defender to represent Williams. Viewing the record in hindsight, there is clearly a pattern of Williams challenging the competency or filing complaints against his various appointed attorneys conveniently prior to pretrial settings and the trial settings in his case. It is also clear in the record, that Williams refused to follow the professional advice and direction of his series of attorneys; the failure of which ultimately led to the imposition of a statutory mandated life sentence. The record shows that seven motions were filed in this case challenging the legality of Williams' arrest in one fashion or another, by attacking the affidavit, warrant, search, arrest and Williams' confession regarding the drugs found in both Williams' home and vehicle. Williams refused to accept the order entered by the Court on January 18, 2005, denying his first four motions on the subject. Williams' refusal to accept the Court's ruling as final on the district court level and

properly proceed to challenge those rulings on direct appeal, also impeded the ability to move his case to trial.

■ Although Williams filed numerous *pro se* pleadings with the Court, at no time did Williams file a demand to set his case for trial. In fact, Williams' repeated act of "firing" his court appointed attorneys impeded the Court from moving his case forward and impeded the administration of justice. "A defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention." *Saltzman,* 984 F.2d at 1094. Williams voluntarily executed a waiver of speedy trial and did so in conjunction with his attorney's request to withdraw on the eve of trial. Each continuance of Williams' trial date was made upon a request that a new attorney be appointed to represent him. Thus Williams, by his own conduct did not only wait passively, but knowingly acquiesced in the continuances of his trial.

The Court further finds that between March 2005 and May 2005, during the time that Williams was represented by attorney Richard White, Jr., the delay in bringing the case to trial was caused by the government's engagement in plea bargaining negotiations with Williams and attorney White. As regards to this delay, the violation is attributed equally to both the defendant and the government, as the defendant voluntarily signed a speedy trial waiver. The Court finds that both parties were acting under a good faith belief that defendant's waiver of speedy trial would effectuate the opportunity for the parties to engage in plea negotiations. Although both the government and defense counsel should have been aware of the longstanding rule that the application of the Speedy Trial Act may not be prospectively waived, the Court nevertheless finds that the parties were acting in good faith and not in an attempt to circumvent the application of the Speedy Trial Act. See, e.g. *United States v. Jarzembowski,* 2007 WL 2407275 (W.D.Pa.2007).

The Court also considers the timing and manner in which the Speedy Trial Act violation was brought to the Court's attention, specifically on the eve of trial. Williams' sixth attorney filed the motion to dismiss in conjunction with a motion to continue the trial for an additional two to three months. This fact indicates attorney Lynn's awareness of the demands made by Williams on his prior five attorneys to become familiar with his case, obtain and review discovery materials, review motions filed, assess efforts at plea negotiations, and generally to sort the wheat from the chaff as to the merits of Williams' demand to hire experts, challenge the search and contest his confession. As Williams' sixth attorney was later to learn, the demands to hire expert witnesses, investigators and seek subpoena duces tecum were all shown to be futile.

The Court acknowledges error in not entering findings on the record to support granting the continuances in this case, as required under the Speedy Trial Act. As held by the Tenth Circuit, this error is a factor which led to the dismissal of the case. However, in balancing the facts and circumstances which led to the dismissal, the Court finds that Williams' own conduct was the precipitating cause which led to the dismissal.

Moreover, the Court was faced with a dual obligation to not only protect Williams' statutory right to a speedy trial, but also his Constitutional right to be represented by an impartial attorney. In *United States v. Lott,* 310 F.3d 1231 (10th Cir.2002), the Tenth Circuit reversed the district court for failure to hold a hearing on defendant's motion for substitute counsel. The court instructed:

To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparent unjust verdict. (citation omitted). Good cause for substitution of counsel consists of more that a mere strategic disagreement between a defendant and his attorney, (citation omitted) rather, there must be a total breakdown in communications.

310 F.3d at 1249.

The Tenth Circuit held that "[i]f a defendant makes sufficient specific factually based allegations in support of his request for counsel, the district court must conduct a hearing into his complaint." *Id.* "Formal inquiry may not be necessary, however, where the defendant otherwise stated his reasons for dissatisfaction on the record." *Id.* In this case, the record shows that during the ensuing eleven months that this case was pending trial, Williams or his various attorneys filed repeated motions for substitution of counsel. In each instance one of the three triggering factors listed in *Lott* compelled this Court to make formal inquiry into the necessity for substitute counsel, the failure of which may have resulted in a violation of Williams' Sixth Amendment rights. The Tenth Circuit emphasized the importance of such inquiry in *Lott:*

> Even if a defendant's counsel is competent, a serious breakdown in communication can result in an inadequate defense. (citation omitted). A defendant who cannot communicate with his attorney cannot assist his attorney with preparation of his case, including suggesting potential witnesses to call and trial strategies to pursue, discussing whether the defendant himself should testify, and helping formulate other bread-and-butter decisions that can constitute the core of a successful defense. A trial court's failure to appoint new counsel when

faced with a total breakdown in communication may thus constitute a denial of counsel in violation of the Sixth Amendment.

310 F.3d at 1250.

In his *pro se* pleadings, Williams used the trigger factors of "conflict of interest" or "breakdown of communication" which required the Court to set hearings and continue trial dates. In hindsight, the timing of Williams' complaints against his various attorneys conveniently fell on the eve of pretrial hearings and trial settings. This pattern suggests an attempt on Williams' part to sabotage the criminal justice system. "Where it is the conduct of the defendant or defense counsel which creates the delay, it is only the public's interest in a speedy trial which has been violated. Using the sanction of dismissal for such delay would be counterproductive because, even though it might keep the courts and prosecution on their toes, the possibility of dismissal would serve as a powerful incentive for defense counsel to create delay." *United States v. Peeples,* 811 F.2d 849, 852 (5th Cir.1987).

Williams claims the 104 nonexcludable days of delay, as found by the Tenth Circuit, was substantial in this case and should dictate a finding of dismissal with prejudice. However, the Fifth Circuit held to the contrary in *United States v. Peeples* which was based on facts similar to *Williams'* case. In *Peeples,* the defendant argued that 306 nonexcludable days was a substantial amount of time and should favor dismissal with prejudice. Peeples executed a written waiver of speedy trial. The district court found that the delay in *Peeples* case concerned an "honest confusion" about the scope of Peeple's waiver of Speedy Trial Act right. In affirming the district court, the Fifth Circuit stated, "The fact that the cause of delay was confusion for which Peeples was

at least in part responsible favors dismissal without prejudice. Moreover, Peeples' responsibility for the delay substantially undercuts any weight the length of the delay may have had in favor of dismissal with prejudice." *Peeples,* 811 F.2d at 851.

As in *Peeples,* Williams executed a written waiver of speedy trial. The transcripts of the hearings held by the Court and filed herein are replete with conversations between the government, the Court and defense counsel as to the scope of Williams' waiver of speedy trial. As in *Peeples,* it was the defense attorney who drafted the waiver which was signed and approved by the defendant.

> Indeed, on its face the waiver filed July 16 is ambiguous as to whether it is a general one: although Peeples requested a continuance he waived 'any right under the Speedy Trial Act.' We cannot conclude that the district court was bound to construe the waiver as manifestly intended to secure a continuance and submitted for no other purpose. (citation omitted).

*Id.*

Although the Tenth Circuit held that Williams' prospective waiver of speedy trial was error, this Court finds that such error was the result of a good faith belief that the Williams' waiver was valid and confusion as to the scope of his waiver.

The Court finds that in balancing the facts and circumstances which caused the dismissal of this case, the scale weighs heavily toward defendant's conduct in failing to cooperate with one or more of the series of attorneys appointed to represent him in their respective efforts to bring this case to completion through plea negotiations or trial by jury.

### Impact of Reprosecution on the Administration of the Act and on Justice

██ "In analyzing this final factor, the court must consider the prejudice in-flicted upon defendant as a result of the delay, the necessity of dismissing the case with prejudice to insure future compliance with the Act, and the public's interest in bringing defendant to trial." *United States v. Lopez,* 166 F.3d 1222, 1998 WL 892297 (10th Cir.1998) (unpublished), citing *United States v. Blevins,* 142 F.3d 223, 226 (5th Cir.1998). "[T]he defendant has a burden under the Act to show specific prejudice other than that occasioned by the original filing." *United States v. Saltzman,* 984 F.2d at 1094, citing *United States v. Kramer,* 827 F.2d 1174 (8th Cir. 1987); and *Peeples,* 811 F.2d at 852. The Court finds, as the Tenth Circuit held in *Saltzman,* that "[b]ecause the Defendant failed to sustain his burden, the administration of justice is best served by dismissal without prejudice." *Id.*

Specifically, the Court finds that the administration of the Act will not be impacted adversely by subjecting Williams to renewed prosecution. The Court finds that reprosecution would not undermine the administration of the Act, but instead would advance the administration of justice. Since the government did not intentionally contribute to the delay, dismissal with prejudice would do little to deter or advance the administration of the Act. Further, Williams fails to demonstrate how he would be prejudiced by reprosecution. The record indicates that he waited until well after the seventy-day limit to file his motion for dismissal and he filed the motion simultaneously, and in the alternative, for a continuance in his trial for a period of three months.

The Act's purpose and intent would be misserved by a finding of prejudice. The same system that was used to so conscientiously protect Williams' Sixth Amendment rights to impartial counsel should not be improperly employed by Williams to escape any chance of criminal liability.

The Court has already ruled on the validity of the search and resolved all pretrial motions filed by the defendant's series of lawyers. The Court previously granted Williams' motions to hire, at government expense, expert witnesses and obtain all proper discovery documents. Apparently, the granting of these motions did not result in any favorable evidence for Williams to present because Williams did not present any evidence at trial. Therefore a retrial of this case could commence shortly after a second indictment is issued. A retrial in this case would take less than two days. Reprosecution of this case would entail neither lengthy pretrial motions, trial preparation nor a lengthy trial.

■ The defendant has failed to list one witness that he would call in his defense. Moreover, after Williams was advised of his *Miranda* rights, and voluntarily waived those rights, he confessed to ownership of the narcotics and to the loaded firearm in his possession. "[G]eneral assertions prejudice and unproven allegations of post-dismissal prejudice are insufficient to support dismissal with prejudice." *Lopez* citing *United States v. Kramer*, 827 F.2d 1174, 1178 (8th Cir.1987).

Williams has not shown prejudice from the length of his incarceration or the loss of his wife and child. Williams' length of incarceration has little relevance in this case because Williams has both confessed to the commission of the crimes charges, and he has been tried and found guilty by a jury. Williams faces a mandatory term of life imprisonment if reprosecuted and found guilty. The time served in violation of the Speedy Trial Act can properly be applied to any sentence Williams may receive upon reprosecution of this case. "The public's strong interest in requiring defendant to be held responsible for his crimes has not been overcome on this record." See, e.g. *Lopez*, 166 F.3d 1222.

The Tenth Circuit instructs, "Where the delay caused by the government is unintentional and the district court takes it upon itself to share in the blame for the delay, the administration of justice is not served by dismissal with prejudice." *United States v. Abdush–Shakur*, 465 F.3d 458, 463–464 (10th Cir.2006). The record contains no evidence that Williams will be prejudice by the delay.

The court finds that the defense is not prejudiced by the delay and that this factor weighs in favor of dismissal without prejudice.

### Conclusion

The Court has assessed all requisite factors in concluding that this case should be dismissed without prejudice. The Court finds that the delay in bringing Williams to trial, was unintentional by the Government and inadvertent by the Court; and further that there was no negligent or bad faith conduct by the Government. Given the seriousness of the crimes charged; the government's lack of culpability for the delay; Williams' conduct which precipitated the delay; the lack of impact on the administration of Act and on the administration of justice; as well as Williams' inability to demonstrate prejudice, the Court finds that this case should be dismissed without prejudice under the precedent established by the Tenth Circuit and cited herein.

Accordingly, it is the order of the Court that this case is hereby dismissed without prejudice to refiling and reprosecution.

IT IS SO ORDERED.