FILED
United States Court of Appeals
Tenth Circuit

August 13, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

DEMARCO DEON WILLIAMS,

Defendant–Appellant.

Nos. 08-5116 and 08-5117

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NOS. 4:04-CR-00167-HDC-1 AND 4:08-CR-00021-CVE-1)**

---

Stephen L. Sewell, Assistant United States Attorney, Tulsa, Oklahoma (David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, and Matthew P. Cyran, Assistant United States Attorney, with him on the briefs) for Plaintiff–Appellee.

Fred Randolph Lynn, Tulsa, Oklahoma, for Defendant–Appellant.

---

Before **HARTZ**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

On a previous appeal in this case, we found a violation of the Speedy Trial Act

and remanded defendant–appellant Demarco Deon Williams's prosecution with

instructions to determine whether to dismiss his indictment with or without prejudice. *United States v. Williams*, 511 F.3d 1044 (10th Cir. 2007); *see also* 18 U.S.C. § 3162(a)(2) (requiring dismissal of an indictment on motion of the defendant if the defendant is not brought to trial within a certain time period). On remand, the district judge dismissed the indictment without prejudice. *United States v. Williams*, 532 F. Supp. 2d 1323 (N.D. Okla. 2008). The Government soon sought another prosecution, and a jury found Mr. Williams guilty of two counts of possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Mr. Williams received concurrent life sentences for the drug convictions and 120 months in prison for the possession of the firearm. He again appeals.

In appeal No. 08-5116, Mr. Williams argues that the district judge abused his discretion by dismissing the indictment without prejudice and erred by failing to hold a hearing before that dismissal. Further, in appeal No. 08-5117, Mr. Williams raises several additional issues. Mr. Williams argues that the district judge erred by not ordering the *in camera* production of an informant for the purpose of determining whether Mr. Williams was entitled to an evidentiary hearing where he could seek the suppression of evidence by challenging the veracity of a warrant affidavit affiant.

He also argues that the district judge erroneously admitted an involuntary

confession; that the Internal Affairs files of a testifying officer should have been produced under *Brady v. Maryland*, 373 U.S. 83 (1963), or at least reviewed *in camera* by the district judge for the purpose of determining whether they contained *Brady* material; that his Sixth Amendment right to cross-examine adverse witnesses was violated; and that his concurrent life sentences violate the Eighth Amendment. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). We **AFFIRM** in both appeals, rejecting Mr. Williams's claims of error.

## I. BACKGROUND

Following the discovery of cocaine at his residence and in his car, and a firearm at his residence, Mr. Williams was indicted on two counts of possession with the intent to distribute 50 grams or more of cocaine base, one count of possession of a firearm in furtherance of a drug trafficking crime, and one count of being a felon in possession of a firearm. R. (08-5116), Vol. I, Doc. 1, at 1–4 (Original Indictment Dated October 7, 2004). In addition, the Government filed an information detailing prior felony drug offenses by Mr. Williams, including felonies from 1993 and 1994. R. (08-5116), Vol. I, Doc. 45, at 1 (21 U.S.C. § 851 Enhancement Information).

On September 9, 2005, Mr. Williams filed a motion to dismiss the original indictment on Speedy Trial Act grounds. R. (08-5116), Vol. I, Doc. 55 (Motion to Dismiss on Speedy Trial Grounds). The district judge denied Mr. Williams's motion, and on appeal, we held that the denial was error. *Williams*, 511 F.3d at 1047, 1059.

We found a violation of the Speedy Trial Act, and remanded the case with instructions to dismiss the indictment with or without prejudice after considering the relevant factors under 18 U.S.C. § 3162(a)(2). *Id.* at 1059; *see* 18 U.S.C. § 3162(a)(2) (requiring dismissal of an indictment on the motion of the defendant if the defendant is not brought to trial within a certain time period).

On remand, Mr. Williams requested a hearing on the issue of whether his indictment should be dismissed with or without prejudice. R. (08-5116), Vol. I, Doc. 147, at 1 (Motion for Hearing and Brief in Support of Dismissal with Prejudice). Without holding a hearing, the district judge concluded that the relevant factors supported dismissing the indictment without prejudice. *Williams*, 532 F. Supp. 2d at 1334.

Shortly thereafter, the Government obtained another indictment of Mr. Williams for the same offenses. R. (08-5117), Vol. I, Doc. 2, at 1–4 (Second Indictment Dated February 6, 2008). Mr. Williams then made several pre-trial motions relevant to his appeal in No. 08-5117. Mr. Williams requested that the district judge hold an *in camera* examination of the informant mentioned in the affidavit for the search warrant for his house to determine if he was entitled to a *Franks v. Delaware* hearing.[1] R. (08-5117), Vol. I, Doc. 12, at 1 (Motion for *In*

---

[1] *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (entitling a defendant in certain circumstances to a hearing at which he or she can challenge the veracity of a search warrant affidavit's affiant).

*Camera Ex Parte* Hearing). Officer Henderson's warrant affidavit stated that an informant had told him that a black male had been selling cocaine from Mr. Williams's residence. R. (08-5116), Vol. I, Doc. 82-2, at 2 (Affidavit for Search Warrant).

In support of his request for an *in camera* examination, Mr. Williams submitted an affidavit in which he stated that he had "never, ever, ever sold cocaine base or any other illegal substance from the residence in question." R. (08-5117), Vol. I, Doc. 12, at 4 (Motion for *In Camera Ex Parte* Hearing); R. (08-5116), Vol. I, Doc. 82-2, at 5 (Affidavit of Demarco Deon Williams). He also relied on two instances of previous conduct by Officer Henderson. R. (08-5117), Vol. I, Doc. 12, at 5 (Motion for *In Camera Ex Parte* Hearing).

First, Officer Henderson had been disciplined for violating Tulsa Police Department regulations forbidding officers from effecting personal arrests in their own quarrels. R. (08-5116), Vol. I, Doc. 82-2, at 14 (Personnel Order Regarding Officer Henderson). In addition, Officer Henderson was investigated for offering false information in a probable cause affidavit, in an offense report, and during an Internal Affairs interview. R. (08-5116), Vol. I, Doc. 82-2, at 19 (Internal Affairs Memorandum). Officer Henderson had failed to include the fact that a witness was present with him when he went to a hotel room where drug sales were suspected of being made. *Id.* at 18–19, 33–34; D. Ct. (No. 4:04-CR-00167-HDC-1), Doc. 74, at

8–9, 23–25 (Internal Affairs Memorandum).

The district judge denied the motion for an *in camera* examination of the informant. R. (08-5117), Vol. I, Doc. 27, at 6 (District Court Opinion and Order Dated April 7, 2008).

Mr. Williams also asked the district judge to compel the production, under *Brady v. Maryland*,[2] of the Internal Affairs files of Officer Henderson, or to review those files *in camera* to determine if they contained *Brady* material. R. (08-5117), Vol. I, Doc. 17, at 2 (Motion to Compel Production of Impeachment Material). To support this request, Mr. Williams invited the attention of the district judge to the same two prior incidents of conduct by Officer Henderson that he urged in support of his request for an *in camera* examination of the informant. *Id.* at 1.

The district judge held that the request for production was moot because the Government had requested any *Brady* materials from the Tulsa Police Department, but had not yet received that evidence. R. (08-5117), Vol. I, Doc. 27, at 11 (District Court Opinion and Order Dated April 7, 2008).

The district judge held a *Jackson v. Denno*[3] hearing and then ruled that a

---

[2]*See Brady*, 373 U.S. at 87 (holding that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment).

[3]*See Jackson v. Denno*, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined."); 18
(continued...)

confession Mr. Williams had made after the discovery of cocaine at his residence on July 27, 2004, was voluntary. R. (08-5117), Vol. I, Doc. 31, at 13 (District Court Opinion and Order).

A jury trial followed, and the relevant testimony was as follows: Officer Jeff Henderson testified that he helped execute a search of a residence, and Mr. Williams was found inside. R. (08-5117), Vol. II, Doc. 59, at 23, 26 (Trial Transcript Dated April 24, 2008). Officers Randy MacKenzie, Thomas Sherman, and Kevin Hill were also present. *Id.* at 24–27. Officer Henderson acted as the property recovery officer for all the evidence obtained at the residence. *Id.* at 24. Officer Henderson testified that Officer Hill discovered a bag that contained a large portion of suspected cocaine, and Officer Hickman discovered a revolver. *Id.* at 27–29. Officer MacKenzie then read Mr. Williams his *Miranda*[4] rights in Mr. Williams's living room. *Id.* at 38.

Officer Henderson and Officer Sherman also interviewed Mr. Williams at a police station. *Id.* Mr. Williams stated that he understood his rights and wanted to cooperate with the police. *Id.* at 39. Mr. Williams admitted that he sold drugs and that the drugs and the gun found at his house were his. *Id.* at 40–41. He also signed

[3](...continued)
U.S.C. § 3501(a) ("Before [a confession] is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness.").

[4]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

a witness statement that had been drafted by Officer Henderson. *Id.* at 41–42. Mr. Williams had requested Officer Henderson to write the statement in Mr. Williams's words. *Id.* at 42. Mr. Williams reviewed the statement and then signed it. *Id.* Mr. Williams was permitted to return home under the agreement that he was to cooperate with the police in future drug investigations. *Id.* at 44. However, Mr. Williams did not later assist the police. *Id.*

Officer Henderson further testified that on October 5, 2004, he saw Mr. Williams in a parked car, and after Officer Henderson determined that a felony warrant for Mr. Williams's arrest was outstanding, Officer Henderson called for the assistance of a uniformed officer. *Id.* at 45–46.

Officer Demetrius Thompson then arrived at the scene. *Id.* at 46. Officer Henderson discovered bags of crack cocaine in Mr. Williams's vehicle. *Id.* at 47–48, 51. Officer Henderson then arrested Mr. Williams. *Id.* at 73. He prepared a booking sheet for the arrest of Mr. Williams that reflected a birth date of February 27, 1975, and a social security number. *Id.* at 55.

On cross-examination, Mr. Williams sought to impeach Officer Henderson by questioning Officer Henderson about a previous Internal Affairs investigation in an unrelated case. *Id.* at 61. Officer Henderson had been investigated for offering false information in a probable cause affidavit, in an offense report, and during an Internal Affairs interview. R. (08-5116), Vol. I, Doc. 82-2, at 19 (Internal Affairs

Memorandum). However, the district judge forbad him from questioning Officer Henderson about the matter. R. (08-5117), Vol. II, Doc. 59, at 61–62 (Jury Trial Transcript Dated April 24, 2008).

Additional testimony was provided at trial that supplemented Officer Henderson's version of the events. Officer MacKenzie testified that he saw Officer Hill locate a sack that contained a large amount of tan rock consistent with cocaine base. *Id.* at 16. Officer MacKenzie also testified that he read Mr. Williams *Miranda* warnings and Mr. Williams indicated that he understood his rights. *Id.* at 18–19.

Officer Sherman testified that Mr. Williams voluntarily spoke with Officer Sherman and Officer Henderson when they interviewed him at the police station. *Id.* at 90. Officer Sherman further testified that, at that interview, Mr. Williams admitted possession of the firearm and also admitted that he tried to put a large amount of cocaine into his kitchen sink. *Id.* at 91. Mr. Williams also indicated that he intended to sell the cocaine. *Id.* at 92. Officer Sherman also testified that Officer Henderson filled out a witness statement, read it to Mr. Williams, and then Mr. Williams signed the statement. *Id.* at 92–93.

Officer Roger Smith testified that he spoke to Mr. Williams at the police department after the October 5, 2004, traffic stop. *Id.* at 75–77. Mr. Williams admitted that the drugs and the gun found during the July 27, 2004, search belonged to him. *Id.* at 80–81. Officer Smith testified that Mr. Williams told him that the

drugs he was caught with on October 5, 2004, had been received from someone named Joker. *Id.* at 79–80. Mr. Williams indicated that he owed Joker $10,000 because Joker had fronted him the cocaine. *Id.* at 79. In addition, ATF Special Agent Brandon McFadden testified that he spoke with Mr. Williams on March 10, 2005, and Mr. Williams told him that he distributed crack cocaine. R. (08-5117), Vol. II, Doc. 60, at 74–76 (Jury Trial Transcript Dated April 25, 2008).

Robert Yerton of the Tulsa Police Department testified that in his opinion fingerprints from Mr. Williams's booking sheet matched fingerprints from a penitentiary packet in the name of Demarco Deon Williams, and that packet contained copies of previous convictions. *Id.* at 14, 17–18, 21. The Government also submitted certified copies of Mr. Williams's previous judgments and sentences. *Id.* at 22.

Mr. Williams testified that he did not own any of the drugs found, but admitted that he did own the firearm. *Id.* at 24–25. He testified that the confession he signed was blank, and that the police told him that if he did not sign the confession they would send him to prison for the rest of his life. *Id.* at 26–27. Mr. Williams also denied that he was the individual listed on the copies of the previous judgments and sentences. *Id.* at 33–34. He testified that the final digit of the social security numbers contained on the judgments was incorrect and denied providing his social security number to the person who took his information for his booking sheet. *Id.*

at 33–34, 73.  However, he acknowledged that the birthday listed on the judgments was his date of birth–February 27, 1975.  *Id.* at 44–47.  Further, the social security number he claimed as his own was identical to the number on the booking sheet prepared by Officer Henderson, except for the final digit.  R. (08-5117), Vol. II, Doc. 59, at 23, 55 (Trial Transcript Dated April 24, 2008); R. (08-5117), Vol. II, Doc. 60, at 33 (Jury Trial Transcript Dated April 25, 2008).  He also admitted that the photographs contained in the penitentiary packet were of himself.  R. (08-5117), Vol. II, Doc. 60, at 70 (Jury Trial Transcript Dated April 25, 2008).

Mr. Williams was convicted on two counts of possession with the intent to distribute 50 grams or more of cocaine, and on one count of being a felon in possession of a firearm.  R. (08-5117), Vol. II, Doc. 60, at 86 (Trial Transcript Dated April 25, 2008).  The district judge sentenced Mr. Williams to concurrent life sentences for the drug possession offenses, and 120 months in prison for the firearm possession offense, rejecting Mr. Williams's argument that the life sentences violated the Eighth Amendment.  R. (08-5117), Vol. II, Doc. 61, at 5, 10 (Sentencing Hearing Transcript Dated July 30, 2008).  These appeals followed.

## II.  DISCUSSION

### A.  Dismissal Without Prejudice of the Indictment After the Speedy Trial Act Violation

Mr. Williams argues that the district judge abused his discretion by dismissing

his original indictment without prejudice. He raises a variety of arguments, the most salient of which we address explicitly. He further argues that he was entitled to a hearing before the district judge dismissed his indictment. We reject both arguments.

## 1. Dismissal Without Prejudice

A district judge's decision to dismiss an indictment without prejudice for violation of the Speedy Trial Act, 18 U.S.C. § 3161, is reviewed for an abuse of discretion. *United States v. Jones*, 213 F.3d 1253, 1256 (10th Cir. 2000). "When the district court has exercised that discretion, our function is to insure that the statute is effectuated, recognizing that 'when the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed.'" *Id.* at 1257 (quoting *United States v. Taylor*, 487 U.S. 326, 337 (1988)).

Relevant factors in determining whether a dismissal should be with or without prejudice include, but are not limited to: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. 18 U.S.C. § 3162(a)(2). We address each of these factors, and conclude that the district judge did not abuse his discretion by dismissing Mr. Williams's original indictment without prejudice.

### a. Seriousness of the Offense

-12-

The district judge correctly concluded that Mr. Williams's charged offenses were serious. If the court determines the offenses committed by the defendant are serious, this factor weighs in favor of dismissing without prejudice. *United States v. Saltzman*, 984 F.2d 1087, 1092–93 (10th Cir. 1993).

Included in the four count indictment was one count of being a felon in possession of a firearm and two counts of possession with the intent to distribute 50 grams or more of cocaine base. Being a felon in possession of a firearm is a serious offense. *See United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002) (holding that possession of a firearm by a felon is a serious offense under 18 U.S.C. § 3162(a)(2)).

Moreover, felony drug charges are generally treated as serious offenses. *Saltzman*, 984 F.2d at 1093 n.8. And Congress's permitting, and sometimes mandating, that a life sentence be imposed for possession with the intent to distribute 50 grams or more of cocaine base demonstrates the seriousness of Mr. Williams's particular drug offenses. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A). Therefore, we conclude that this factor weighs heavily in favor of dismissal without prejudice.

### b. Facts and Circumstances

We agree with the district judge that the facts and circumstances that led to the dismissal support dismissal without prejudice. In evaluating these facts and circumstances, the court should focus on the culpability of the delay-producing

conduct. *Saltzman*, 984 F.2d at 1093.  For example, we have explained that where the delay in bringing the case to trial is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy. *Id.* at 1093–94.

The record does not show either intentional dilatory conduct or a pattern of neglect by the Government, nor does Mr. Williams assert that such conduct was present.  Moreover, the record demonstrates that Mr. Williams is partially responsible for the delay.  Contrary to Mr. Williams's assertions, he did not assert his Speedy Trial Act rights until after the Act had been violated, and the district judge's inquiry into his responsibility for the delay in his trial was relevant.

Mr. Williams asserts that he timely asserted his Speedy Trial Act rights in an August 2005 letter that he sent to the district judge.  In that letter, Mr. Williams states that "Its been Almost a Calendar year since a Lawyer has filed motions on my behalf with that alone lets you know that someone's not doing their job in order to help their client." R. (08-5116), Vol. I, Doc. 48, at 1 (Letter from Demarco Deon Williams to the Honorable H. Dale Cook).  The letter further stated that it was "solely for the purpose to inform the Court that [Mr. Williams's attorney] is not competent." *Id.*

By its terms, Mr. Williams's letter is solely directed toward complaints about his attorney.  The record makes clear that Mr. Williams did not assert his Speedy

Trial Act rights until September 9, 2005, the date he filed his motion to dismiss the original indictment on Speedy Trial Act grounds. By that time, the Act had already been violated. *See Williams*, 511 F.3d at 1047, 1059. The district judge properly considered that fact and other indications that Mr. Williams may have contributed to the delay in his trial when making his decision to dismiss the case without prejudice. *See Saltzman*, 984 F.2d at 1094 (holding that a defendant who waits passively while the time runs has less claim to dismissal with prejudice than a defendant who demands, but does not receive, prompt attention); *United States v. Abdush-Shakur*, 465 F.3d 458, 463 (10th Cir. 2006) (holding that the defendant "must also shoulder his share of the responsibility for the delay" that resulted in a violation of the Speedy Trial Act). This factor favors dismissal without prejudice.

### c. Impact of a Reprosecution

We are also convinced that the district judge correctly concluded that the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice supported dismissal of the indictment without prejudice. In determining whether a dismissal with or without prejudice serves the administration of the Speedy Trial Act and of justice, a court should consider, among other factors, whether the delay caused by the Government was intentional and the prejudice suffered by the defendant from the Act's violation. *See Abdush-Shakur*, 465 F.3d at 463–64; *Saltzman*, 984 F.2d at 1094; *see also Taylor*, 487 U.S. at 334.

-15-

The defendant has a burden under the Act to show prejudice other than that occasioned by the original filing. *Saltzman*, 984 F.2d at 1094.

As we have observed above, there is no evidence that the Government engaged in intentional dilatory conduct. Further, Mr. Williams has failed to demonstrate sufficient prejudice to require dismissal with prejudice.

Mr. Williams's October 7, 2004, indictment alleged two counts of possession with the intent to distribute 50 grams or more of cocaine base. Under 21 U.S.C. § 841(b)(1)(A), a person that possesses with the intent to distribute 50 grams or more of cocaine base with two or more prior felony drug convictions faces a mandatory life sentence. *See* 21 U.S.C. § 841(b)(1)(A). Further, under 21 U.S.C. § 851(d), the Government is required to file an information with the district judge stating the defendant's prior felony drug convictions before a defendant's sentence can be enhanced under § 841(b)(1)(A). *See id.* § 851(a)(1). Section 851(d) further provides that "[n]o person who stands convicted of an offense under [§ 841] may challenge the validity of any prior conviction alleged under [§ 851] which occurred more than five years before the date of the information alleging such prior conviction." *Id.* § 851(d).

Mr. Williams asserts that he was prejudiced by his inability to challenge the validity of two prior felony drug convictions from 1993 and 1994 that were to be used to enhance his sentence under 21 U.S.C. § 841(b)(1)(A). However, the

prejudice that a defendant must establish to seek a dismissal with prejudice for a Speedy Trial Act violation must be caused by that violation. *See Saltzman*, 984 F.2d at 1094 ("[T]he defendant has a burden under the [Speedy Trial Act] to show specific prejudice other than that occasioned by the original filing."). Here, even if a trial had been held shortly after the date of the original indictment–October 2004–he would still not have been able to challenge the validity of either his 1993 or his 1994 conviction. Both convictions would have occurred more than five years before the date the § 851 information would have been filed (presumably after October 2004). Therefore, Mr. Williams's inability to challenge his two prior convictions is irrelevant to the district judge's decision to dismiss his original indictment without prejudice. In sum, on this record we cannot conclude that the district judge abused his discretion by dismissing Mr. Williams's original indictment without prejudice.

## 2. Failure to Hold a Pre-Dismissal Hearing

Mr. Williams further argues that he was entitled to a hearing before his indictment was dismissed without prejudice, relying on the Ninth Circuit's decision in *United States v. Delgado-Miranda*, which mandated such a hearing. *See United States v. Delgado-Miranda*, 951 F.2d 1063, 1064 (9th Cir. 1991). We find no reversible error.

We have not decided whether a defendant has a right to a hearing before a district judge dismisses an indictment for a Speedy Trial Act violation, and we need

not answer that question here. We conclude that any error in failing to hold such a hearing was harmless; that is, there is no indication that had a hearing been held, the district judge would have dismissed the case with prejudice. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *Neder v. United States*, 527 U.S. 1, 7 (1999) (explaining that Rule 52(a) applies to all but a limited class of fundamental constitutional errors).

As explained above, the factors the district judge was required to consider in making his decision to dismiss with or without prejudice weighed heavily in favor of dismissal without prejudice. Moreover, Mr. Williams fails to point to any facts that the district judge was not already aware of that he would have attempted to establish at a hearing. Under these facts, we are convinced that the district judge's decision to forgo a pre-dismissal hearing, if erroneous, was harmless.

## B. *Franks v. Delaware*

Mr. Williams argues that the district judge erred by not ordering the *in camera* production and examination of the informant and Officer Henderson to determine if Mr. Williams was entitled to an evidentiary hearing under the Supreme Court's decision in *Franks v. Delaware*. We disagree.

In *Franks v. Delaware*, the Supreme Court considered whether a defendant in a criminal proceeding ever has the right under the Fourth and Fourteenth

Amendments, after the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant. *Franks*, 438 U.S. at 155. The Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155–56.

There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. *Id.* at 171. The deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant, not of any nongovernmental informant. *Id.*

Our precedent leads us to the conclusion that it was not error for the district judge to refuse to order an *in camera* hearing here. We rejected an argument similar to Mr. Williams's argument when we decided *United States v. Schauble*. In *Schauble*, a law enforcement officer submitted an affidavit in support of a search warrant in which the officer–affiant stated that an informant contacted him and indicated that the defendant's residence contained marijuana. *United States v. Schauble*, 647 F.2d 113, 114 (10th Cir. 1981). The warrant was executed and illegal drugs were discovered. *Id.* at 115.

The defendant filed a motion to suppress in which he sought to cross-examine the informant as to the truthfulness of the factual statements made in the affidavit or to compel the informant to appear for an *in camera* examination by the court to answer questions supplied by the defendant. *Id.* The purpose of the questioning was to establish that the affiant had intentionally or with reckless disregard for the truth included false statements of the informant in the affidavit. *Id.* The district court denied the motion to suppress. *Id.* The defendant then appealed, arguing that the trial judge erred in denying his motion for a *Franks* hearing and the production of the confidential informant. *Id.* at 117.

We concluded that we did not need to decide whether a defendant who has satisfied the requirements for a *Franks* hearing is entitled to revelation of the identity of a confidential informant, let alone production of the informant at the hearing, because the appellant there had not made the necessary substantial preliminary showing that a false statement was knowingly or intentionally, or with reckless disregard for the truth, included by the affiant in the warrant affidavit. *Id.* at 116–17. We are persuaded that our decision in *Schauble* stands for the proposition that a defendant cannot demand the production and questioning, *in camera* or otherwise, of a confidential informant whose statements are relied upon in a warrant affidavit until the defendant has made the required substantial preliminary showing under *Franks*. *See United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (citing *Schauble*

as holding that because the defendant had not made a substantial showing of the affiant's untruthfulness, the district court did not abuse its discretion in denying the defendant's request for the *in camera* disclosure of an informant whose tip was the basis for the search warrant); *cf. United States v. Kiser*, 716 F.2d 1268, 1273 (9th Cir. 1983) (allowing for the *in camera* examination of a confidential informant *after* the defendant made an offer of proof that constituted a "substantial preliminary showing" that a false statement was included in the affidavit deliberately or with reckless disregard for the truth).

Here, Mr. Williams has not made a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included by the affiant–Officer Henderson–in the warrant affidavit. Officer Henderson's warrant affidavit states that a confidential informant had told Officer Henderson that a black male had been selling cocaine from what was later identified at trial as Mr. Williams's residence. In support of the required showing under *Franks*, Mr. Williams relies upon an affidavit in which he states he has "never, ever, ever sold cocaine base or any other illegal substance from the residence in question."

In addition, Mr. Williams points to various incidents concerning misconduct by Officer Henderson. Officer Henderson had been disciplined for violating Tulsa Police Department regulations forbidding officers from effecting personal arrests in their own quarrels. In addition, Officer Henderson was investigated for offering

false information in a probable cause affidavit, in an offense report, and during an Internal Affairs interview. Officer Henderson failed to include that a witness was present with him when he went to a hotel room where drug sales were suspected of being made.

The showing of these circumstances by Mr. Williams is insufficient to satisfy the requirements of *Franks*. While it may follow from Mr. Williams's affidavit that certain statements attributed to the confidential informant in the warrant affidavit are untrue, it does not necessarily follow that Officer Henderson lied about the informant's existence or statements, or knew that the informant was lying. *See Franks*, 438 U.S. at 171 (holding that the deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant, not of any nongovernmental informant). Moreover, while the real and potential misconduct by Officer Henderson in previous cases is indeed serious, that conduct does not pertain directly to this case. Nor is that misconduct sufficiently pronounced or ubiquitous so as allow us to infer that a false statement was deliberately or recklessly included by Officer Henderson in the warrant affidavit in Mr. Williams's case.

### C. Voluntariness of Mr. Williams's Confession

Mr. Williams further argues that the district judge erred by finding his July 27, 2004, confession to be voluntary and admissible. He asserts that the district judge's finding of voluntariness rested on Officer Henderson's credibility, which Mr.

Williams attacks. We conclude that the district court did not err in finding Mr. Williams's confession to have been voluntary.

The voluntariness of a confession is a question of law which this court reviews *de novo*. *United States v. Lugo*, 170 F.3d 996, 1003 (10th Cir. 1999). However, we accept the district judge's underlying factual findings unless they are clearly erroneous. *Id.* The Government bears the burden of showing, by a preponderance of the evidence, that a confession is voluntary. *United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006).

We determine voluntariness based on the totality of the circumstances, examining: (1) the defendant's age, intelligence, and education; (2) the length of the detention and interrogation; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to or threatened with any physical punishment. *Lugo*, 170 F.3d at 1004. The court must examine the entire record and make an independent determination of the ultimate issue of voluntariness. *Id.*; *see also United States v. Muniz*, 1 F.3d 1018, 1021 (10th Cir. 1993) ("The entire record is considered on appeal which includes evidence at the suppression hearing as well as at trial."). However, a confession is only involuntary when the police use coercive activity to undermine the suspect's ability to exercise his free will. *Lugo*, 170 F.3d at 1004.

Here, considering the totality of the circumstances, we agree with the district

judge that Mr. Williams's July 27, 2004, confession was voluntary. Testimony at trial, which is substantially similar to the evidence admitted at the pre-trial hearing on the voluntariness of Mr. Williams's confession, supports our conclusion.

After the search at Mr. Williams's house, Officer MacKenzie testified that he read *Miranda* warnings to Mr. Williams and Mr. Williams indicated that he understood his rights. Officer Henderson testified that Mr. Williams wanted to cooperate with the police, and Officer Sherman similarly testified that Mr. Williams spoke with them voluntarily. Both Officers Henderson and Sherman testified that Mr. Williams was apprised of the witness statement's contents before he signed it.

While Mr. Williams testified that the statement was blank when he signed it and that the police threatened him with life in prison if he did not sign it, the district judge did not clearly err by refusing to credit this version of the events. The consistent testimony of Officers Henderson and Sherman provided a firm foundation for this refusal. Therefore, we conclude that Mr. Williams's July 27, 2004, confession was voluntarily made.

### D. *Brady v. Maryland* Violation

Mr. Williams asserts that his due process rights, as explained by the Supreme Court in *Brady v. Maryland*, were violated when certain Internal Affairs files pertaining to Officer Henderson were not produced. Specifically, he asserts that the *Brady* violation was that "the Government . . . failed to produce . . . the entirety of

the available record about Officer Henderson's ethical lapses." Appellant's Br. (08-5117) at 20. He also asserts that the district judge was required to hold an *in camera* inspection of Officer Henderson's Internal Affairs files to determine if they contained *Brady* material. We disagree.

The prosecution's suppression of evidence favorable to the accused, including impeachment evidence, violates due process where the evidence is material either to guilt or to punishment. *United States v. Erickson*, 561 F.3d 1150, 1162 (10th Cir. 2009) (citing *Brady*, 373 U.S. at 87). We review *de novo* claims that the prosecution violated *Brady*, including the determination of whether suppressed evidence was material. *United States v. Hughes*, 33 F.3d 1248, 1251 (10th Cir. 1994). To establish a *Brady* violation, the defendant must prove that the prosecution suppressed evidence, the evidence was favorable to the defense, and the evidence was material. *Erickson*, 561 F.3d at 1163. Evidence is material under *Brady* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Velarde*, 485 F.3d 553, 559 (10th Cir. 2007). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* To make the materiality determination, we view the suppressed evidence's significance in relation to the record as a whole. *Hughes*, 33 F.3d at 1252.

Here, the Government did not commit a *Brady* violation, nor did the district

judge commit reversible error by failing to order an *in camera* inspection of Officer Henderson's Internal Affairs files. Mr. Williams has not made even a plausible showing that the Internal Affairs files will produce material evidence. *See, e.g.*, *United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002) (holding that a defendant seeking an *in camera* inspection to determine whether a particular source contains *Brady* material need only make a plausible showing that the file will produce material evidence); *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001) ("A defendant seeking an *in camera* inspection to determine whether files contain *Brady* material must at least make a 'plausible showing' that the inspection will reveal material evidence.").

There is no indication that any of the information contained in Officer Henderson's Internal Affairs files relates to Mr. Williams's case. And even if additional documentation regarding Officer Henderson's "ethical lapses" is included in the absent files, thereby damaging Officer Henderson's credibility in general, overlapping and equally damaging testimony was provided by other witnesses.

At trial, Officer Henderson testified to the discovery of the cocaine at Mr. Williams's house on July 27, 2004, and to the discovery of the cocaine in Mr. Williams's car on October 5, 2004. He further testified that Mr. Williams admitted during his July 27, 2004, interview that the drugs found in his house were his and that he sold drugs. Morever, Officer Henderson testified to the discovery of the

firearm at Mr. Williams's house and testified that Mr. Williams admitted to owning the gun found at his house. In addition, trial testimony indicated that when Officer Henderson arrested Mr. Williams on October 5, 2004, he recovered a driver's license reflecting a birth date of February 27, 1975, and helped prepare an arrest and booking sheet that included a social security number and Mr. Williams's fingerprints.

Officer MacKenzie testified to the discovery of the cocaine at Mr. Williams's house. Officer Smith testified that Mr. Williams admitted to owning the cocaine found at his house and the cocaine found in his car. Further, Officer Sherman, Officer Smith, and ATF Special Agent McFadden all testified that Mr. Williams admitted to distributing cocaine. Officer Sherman testified that he was present at Officer Henderson's interview of Mr. Williams, and during that interview Mr. Williams indicated that he intended to sell the cocaine found at his residence. Officer Smith testified that Mr. Williams stated that he was "fronted" the cocaine that was found in his car. ATF Special Agent Brandon McFadden testified that Mr. Williams admitted distributing crack cocaine.

In addition, Mr. Williams himself testified that he owned the firearm found at his residence. Moreover, Mr. Williams confirmed that the birth date collected by Officer Henderson and present on the copies of the previous felony convictions the Government sought to prove belonged to Mr. Williams was his correct birthday. He also claimed that his social security number was the same as the social security

number collected by Officer Henderson and present on the copies of the previous judgments, except for the last digit. Moreover, Mr. Williams was linked to his penitentiary packet not only by the fingerprints collected by Officer Henderson, but also by photographs contained within that packet that Mr. Williams admitted were of him.

We are convinced that even if additional credibility-damaging material had been discovered in Officer Henderson's Internal Affairs files and presented at trial, the result of Mr. Williams's case would have been the same. Therefore, the Government did not violate *Brady v. Maryland*, nor did the district judge err by not inspecting the withheld materials *in camera*.

### E. Sixth Amendment Right to Confrontation

Mr. Williams argues that his Sixth Amendment right to cross-examine was violated when the district judge limited his cross-examination of Officer Henderson. Specifically, the district judge forbad him from questioning Officer Henderson about an Internal Affairs investigation into Officer Henderson's conduct in a different case. Officer Henderson had been investigated for offering false information in a probable cause affidavit, in an offense report, and during an Internal Affairs interview.

We review *de novo* whether cross-examination limitations infringe a defendant's Sixth Amendment right to confrontation. *United States v. Turner*, 553 F.3d 1337, 1348 (10th Cir. 2009). First, we ask whether the district court erred. *Id.*

Second, we ask whether such error was harmless beyond a reasonable doubt. *Id.* If an error is harmless, we will not reverse. *Id.*

Whether the error is harmless depends upon a host of factors, including: (1) the importance of the witness's testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

As discussed in Part II.D. above, the incriminating evidence apart from Officer Henderson's testimony was overwhelming. That overwhelming evidence would have nullified the exculpatory value of even a successful cross-examination of Officer Henderson regarding his previous Internal Affairs investigation. Therefore, we conclude that any error in restricting Mr. Williams's cross-examination of Officer Henderson was harmless beyond a reasonable doubt.

### F. Cruel and Unusual Punishment

Mr. Williams asserts that the concurrent life sentences imposed for his two cocaine possession convictions violate the Eighth Amendment because they are disproportionate to those crimes. We conclude otherwise.

We review *de novo* whether a criminal sentence violates the Eighth Amendment. *United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006). The

Eighth Amendment contains a narrow proportionality principle that applies to noncapital sentences. *Id.* Under that principle, the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Id.*

Here, Mr. Williams's Eighth Amendment argument is foreclosed by relevant precedent. In *United States v. McKneely*, we upheld a life sentence for a first-time felony conviction for possession with intent to distribute 50 grams or more of cocaine base. *United States v. McKneely*, 69 F.3d 1067, 1070, 1080–81 (10th Cir. 1995); *see also Harmelin v. Michigan*, 501 U.S. 957, 961, 961 n.1, 996 (1991) (upholding a life sentence for a conviction for the possession of 650 grams or more of cocaine). Similarly, Mr. Williams has been convicted on two counts of possession with the intent to distribute 50 grams or more of cocaine base, and has received a life sentence for each conviction. Therefore, following binding precedent, we must conclude that his concurrent life sentences do not violate the Eighth Amendment.

### III. CONCLUSION

We conclude that the district judge did not abuse his discretion by dismissing Mr. Williams's original indictment without prejudice, nor did the district judge commit reversible error by failing to hold a hearing before that dismissal. Therefore, in appeal No. 08-5116, we **AFFIRM**.

We further conclude that the district judge properly refused to examine the informant *in camera*, as Mr. Williams failed to make a substantial preliminary

showing that a false statement was culpably included in the affidavit to the warrant that authorized a search of his residence.

Moreover, we are convinced that Mr. Williams's July 27, 2004, confession was voluntary; that the Government did not commit a *Brady* violation by not producing Officer Henderson's Internal Affairs files and that the district judge did not commit reversible error by refusing to examine those files *in camera*; that any violation of Mr. Williams's Sixth Amendment rights was harmless; and that Mr. Williams's concurrent life sentences do not violate the Eighth Amendment. Therefore, in appeal No. 08-5117, we also **AFFIRM**.