**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

DERRICK REUBEN SMITH,

Defendant–Appellant.

No. 11-6240

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:10–CR–00235–D–1)**

---

Alleen Castellani VanBebber of McDowell, Rice, Smith & Buchanan, P.C., Kansas City, Missouri, for Defendant–Appellant.

Scott E. Williams, Assistant United States Attorney (Sanford C. Coats, United States Attorney, and Chris M. Stephens, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff–Appellee.

---

Before **HARTZ**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Defendant Derrick Reuben Smith was convicted by a jury on one count of

conspiracy to commit wire fraud in relation to real estate mortgages. The district court

declared a mistrial as to four other counts on which the jury could not reach a verdict, later dismissing these counts without prejudice. At sentencing, the district court calculated an advisory sentencing range of thirty-seven to forty-six months' imprisonment. The court then sentenced Defendant to forty months' imprisonment and ordered payment of $369,455.54 in restitution. On appeal, Defendant objects to the district court's dismissal of the mistried counts without, rather than with, prejudice. He also raises two challenges to the district court's calculation of actual loss in its determination of the applicable sentencing range.

## BACKGROUND

Defendant was a real estate investor who conspired to defraud mortgage lenders by setting up sales to straw buyers at inflated prices, with the excess loan proceeds being distributed to Defendant and others. When the buyers then defaulted on the loans, the lenders were unable to recoup the full loan amounts at foreclosure.

The indictment alleged the sales of two houses as overt acts in furtherance of the conspiracy. Both houses were located in the Raintree Acres Addition in Edmond, Oklahoma, and had been recently constructed by the same builder. The first house, 13400 Tahoe Drive, was purchased by one of Defendant's acquaintances in July 2006 for $425,000, which was $50,000 more than the initial asking price of $375,000. At closing, the real estate company received an "extraordinarily high" combined commission and bonus of $51,950 (R. Vol. 3 Part 2 at 147), and both the buyer and Defendant subsequently received payments out of this commission. Approximately $405,000 of the

-2-

purchase price was funded by a lender, while the home builder agreed to receive a seller-carry mortgage for the remaining amount. This seller-carry mortgage was subsequently released without the buyer ever making a payment. The house was sold for a substantial loss in a subsequent foreclosure sale. The same real estate company was involved in the sale of the second home, 7409 N.E. 133rd Street, which Defendant's wife purchased in January 2007 for $435,000, $60,000 more than the initial asking price of $375,000. At this closing, the real estate company received a $19,950 commission and a $58,000 bonus, keeping the commission and turning the bonus over to Defendant. A lender funded more than $410,000 of the inflated purchase price, but the home was sold in foreclosure for only $300,000. With both houses, the income on the buyer's loan application was severely inflated, and other aspects of the transactions also indicated their fraudulent nature. The real estate broker and real estate agent involved in these sales were indicted along with Defendant, and both pled guilty before the case went to trial.

Defendant was indicted on five counts of the fourteen-count indictment. The jury found him guilty of conspiracy to commit wire fraud in regard to real estate mortgages but could not reach a verdict on the other four counts (two counts of wire fraud and two counts of money laundering). The district court declared a mistrial as to these counts. After the seventy days provided for a retrial under the Speedy Trial Act had passed, Defendant filed a motion for dismissal with prejudice of the mistried charges. While the district court agreed the Speedy Trial Act had been violated, it decided dismissal without prejudice was the appropriate remedy under the circumstances. The court accordingly

dismissed these counts without prejudice.

At sentencing, the district court included in its calculation of actual loss the sale of a third residence in the Raintree Acres Addition. Like the two houses included in the indictment, this was a new house constructed by the same builder and sold for significantly more than its initial asking price. This house, 7300 N.E. 133rd Street, was purchased by Defendant's wife in September 2006, in between the sales of the other two residences. Unlike the other two sales, this sale did not involve Defendant's indicted co-conspirators from the real estate agency. Instead of receiving his portion of the inflated sales price through excessive real estate bonuses, Defendant instead received payment through $60,800 in purported rent from the builder, who lived in the house for some months after it was purchased by Defendant's wife. However, in other ways the sale was similar to the other two sales—the houses were sold by the same builder, the same mortgage broker was involved, the buyer's income was inflated on the loan applications, and Defendant profited from using artificially inflated sales prices to increase the loan proceeds. As with the other residence purchased by Defendant's wife, Defendant sent the mortgage broker falsified bank records to support the inflated income representations. Defendant also used the same appraiser who had provided a fraudulent appraisal for the first property. As with the first house, the buyer did not pay any portion of the inflated sale price, with the sale here being funded by both an 80% and a 20% mortgage.

Having concluded the sale of 7300 N.E. 133rd Street should be considered as

relevant conduct, the district court calculated actual loss by subtracting the foreclosure sales price from the outstanding principal amount for this residence as well as the two residences mentioned in the indictment. The court sustained Defendant's objection to a fourth sale that occurred outside the time frame of the charged conspiracy. Based on the three relevant sales, the court calculated a total loss amount of $369,455.54, which resulted in an advisory sentencing range of thirty-seven to forty-six months' imprisonment. The court sentenced Defendant to a within-Guidelines sentence of forty months and ordered payment of $369,455.54 in restitution. This appeal followed.

## DISCUSSION

Defendant raises three issues on appeal. First, he claims the district court abused its discretion by dismissing the mistried counts without prejudice. Second, he contends the court erred in treating the sale of 7300 N.E. 133rd Street as relevant conduct in its sentencing calculation. Third, he argues the court erred in calculating actual loss based on the difference between the outstanding principal balance and the foreclosure sale price.

We first consider the district court's dismissal of the mistried counts. The district court agreed with Defendant that the mistried counts should be dismissed based on the government's violation of the Speedy Trial Act, which provides that a new trial should commence within seventy days after a trial judge declares a mistrial. 18 U.S.C. § 3161(e). However, the court concluded that dismissal without prejudice was warranted under the circumstances of the case. We review this decision for abuse of discretion. *See United States v. Williams*, 576 F.3d 1149, 1157 (10th Cir. 2009).

In deciding whether dismissal should be with or without prejudice, a court "shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *United States v. Taylor*, 487 U.S. 326, 337 (1988).

The district court concluded that the statutory factors weighed in favor of dismissal without prejudice. First, the charged offenses were serious wire fraud and money laundering offenses involving large sums of money. The serious nature of the offenses weighed in favor of dismissal without prejudice. *See Williams*, 576 F.3d at 1158. Second, the facts and circumstances leading to the dismissal did not involve any bad faith on the government's part—there was no suggestion the government had intentionally delayed or shown a pattern of neglect in its prosecution of the mistried charges. *See Taylor*, 487 U.S. at 338-39 (reversing a dismissal with prejudice where there was no showing of bad faith or a pattern of neglect). Moreover, Defendant did not assert his Speedy Trial Act rights until after the violation had occurred, and a district court may "properly consider[] that fact and other indications that [Defendant] may have contributed to the delay in his trial when making [the] decision to dismiss the case without prejudice." *Williams*, 576 F.3d at 1159. Finally, the court concluded that the third factor—the impact

of reprosecution on the administration of the Speedy Trial Act and the administration of justice—did not warrant a dismissal with prejudice. In deciding whether this factor warrants dismissal with prejudice, "a court should consider, among other factors, whether the delay caused by the Government was intentional and the prejudice suffered by the defendant from the Act's violation. The defendant has a burden under the Act to show prejudice other than that occasioned by the original filing." *Id.* (citations omitted). The district court concluded that Defendant had not shown any prejudice caused by the delay, rather than by the possibility of reprosecution itself, and the court further concluded that any possible prejudice was insufficient to justify a dismissal with prejudice.

It is this third factor that Defendant focuses on in this appeal. He argues he suffered prejudice because his Fifth Amendment rights were chilled by the possibility of reprosecution on the mistried counts. He contends the mistried counts were at issue as relevant conduct for sentencing purposes, and their dismissal without prejudice forced him to choose between his Fifth Amendment right to remain silent and his need to defend himself at the sentencing hearing. Defendant also argues dismissal with prejudice was warranted based on an additional, non-statutory factor—his sentence on the conspiracy charge took all of the indicted conduct into account, including the conduct underlying the mistried counts, and thus reprosecution would be unnecessary to vindicate the public's interest in the matter.

We conclude that the district court did not abuse its discretion in dismissing the mistried counts without prejudice. The district court correctly concluded that the first two

statutory factors weighed in favor of dismissal without prejudice. As for the third factor, we agree with the district court that Defendant has not "show[n] specific prejudice other than that occasioned by the original filing." *United States v. Saltzman*, 984 F.2d 1087, 1094 (10th Cir. 1993). This is not a case where a delay caused the loss of a crucial witness or piece of evidence, causing the third statutory factor to weigh in the defendant's favor. *See United States v. Abdush-Shakur*, 465 F.3d 458, 464 (10th Cir. 2006). Indeed, Defendant never attempts to tie his prejudice argument to the delay in retrial. It is the dismissal of the mistried counts without prejudice, rather than the delay in retrying them, that forms the basis for Defendant's argument that his Fifth Amendment rights were prejudiced at sentencing. However, "the prejudice that a defendant must establish to seek a dismissal with prejudice for a Speedy Trial Act violation must be caused by that violation." *Williams*, 576 F.3d at 1159. Defendant has not shown such prejudice here.

Moreover, while the Fifth Amendment provides defendants with the right not to be required to testify, it does not give them the right to testify with impunity. *See Minnesota v. Murphy*, 465 U.S. 420, 427 (1984). "[T]here is no authority to support [the] claim that the court must either refuse to consider evidence of acts for which [a defendant] has not been charged or convicted or grant him immunity from prosecution for any statements made during allocution." *United States v. Fleming*, 849 F.2d 568, 569 (11th Cir. 1988). Like any other defendant, Defendant had the choice to either exercise his Fifth Amendment right to remain silent at the sentencing hearing or to risk incriminating himself with respect to uncharged acts and unresolved criminal charges. *See id.* at 570.

The delay may have changed Defendant's calculation of the risk of self-incrimination, since the mistried charges remained unresolved. However, Defendant retained in full his Fifth Amendment right to remain silent. If any right was affected by the delay, it was Defendant's separate right of allocution, not his Fifth Amendment right to remain silent. However, the right of allocution is not a constitutional right, *see Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995), and we are not persuaded that any potential chilling of this right required dismissal of the mistried charges with prejudice. As for Defendant's argument that dismissal with prejudice was warranted because his sentence on the conspiracy count took the conduct underlying the mistried charges into account, Defendant did not raise this argument below, and we thus review only for plain error. *United States v. Lewis*, 594 F.3d 1270, 1288 (10th Cir. 2010). Under the circumstances of this case, we are not persuaded the district court erred, much less plainly erred, in exercising its discretion to dismiss the mistried charges without prejudice.

We turn next to Defendant's challenges to the district court's sentencing calculation, starting with his argument that the district court erred in determining the sale of 7300 N.E. 133rd Street should be included as relevant conduct for sentencing purposes. We review the factual findings supporting this determination for clear error, but review the ultimate determination of relevant conduct de novo. *United States v. Tran*, 285 F.3d 934, 938 (10th Cir. 2002).

"In calculating loss under the Guidelines, the district court does not limit itself to conduct underlying the offense of conviction, but rather may consider all of the

defendant's relevant conduct." *United States v. Griffith*, 584 F.3d 1004, 1011 (10th Cir. 2009) (internal quotation marks omitted). For offenses that are sentenced under U.S.S.G. § 2B1.1, like Defendant's offense, "relevant conduct includes all acts in the same course of conduct or common scheme or plan." *United States v. Flonnory*, 630 F.3d 1280, 1286 (10th Cir. 2011). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 cmt. n.9(A). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. n.9(B). "[I]f the conduct is sufficiently similar and within the same temporal proximity, it may be considered relevant for purposes of determining the guideline range." *Griffith*, 584 F.3d at 1012.

Defendant argues his relevant conduct was limited to the real estate transactions mentioned in the indictment and did not include the separate sale of 7300 N.E. 133rd Street. He contends the sale of this property was not part of a common scheme or course of conduct because it did not fit within the conspiracy template ascribed to Defendant and his co-conspirators: the co-conspirators were not involved in the sale; although the same builder was involved, this was his private residence, not a house he built to sell to third parties; and Defendant did not receive payments from excessive realtor commission

-10-

amounts, but rather received rental checks from the builder. Defendant also argues there was nothing illegal about his rental agreement with the builder and thus the transaction could not be counted as relevant conduct for sentencing. *See id.* at 1013.

We conclude that the district court did not err in considering the sale of this house as relevant conduct. First, we hold that the district court did not clearly err in finding the transaction was fraudulent because, as with the other two sales, Defendant used false loan applications and artificially inflated sales prices to obtain inflated loan proceeds from a lender. Second, although there were some dissimilarities between the transactions, this sale still involved a common purpose, common accomplices, and, at least in some aspects, a similar modus operandi. With all three transactions, Defendant sought to defraud lenders into paying excessive loan proceeds based on artificially inflated sales prices and false loan applications. All three transactions involved the same seller and mortgage broker, and the sale of 7300 N.E. 133rd Street involved the same buyer as 7409 N.E. 133rd Street and the same appraiser as 13400 Tahoe Drive. As with the purchase of 7409 N.E. 133rd Street, Defendant sent the mortgage broker falsified bank statements to inflate his wife's reported income. This transaction also occurred in temporal proximity to the other two offenses, falling in between the two sales mentioned in the indictment. The fact that Defendant did not involve his indicted co-conspirators in this sale does not remove it from the realm of relevant conduct. *See United States v. Torres*, 182 F.3d 1156, 1161 (10th Cir. 1999) ("In fact, several courts, including this one, have found relevant conduct under § 1B1.3(a)(1) in situations where the prior offense did not involve

any conspirator other than the defendant."). Nor are all of the other common factors between the transactions mooted simply because Defendant recovered the artificially inflated loan proceeds via a sham rental scheme rather than sham realtor bonuses. We hold that the sale of 7300 N.E. 133rd Street was properly counted as relevant conduct.

Finally, we turn to Defendant's argument that the district court erred in calculating actual loss, reviewing the court's loss calculation methodology de novo and its factual findings for clear error. *United States v. Washington*, 634 F.3d 1180, 1184 (10th Cir. 2011). For each of the three properties, the district court calculated loss by subtracting the foreclosure sales price from the outstanding principal balance at the time of foreclosure. Defendant argues this calculation was incorrect because it did not parse out the losses sustained by the different lenders, i.e., the original lenders and any successor lenders for each loan. Defendant also argues the district court was required to determine whether any loans had been sold and then base its loss calculation on the amount the downstream lenders paid for the loans, not on the outstanding balance. In essence, Defendant contends that only the downstream lenders, not the original lenders who funded the loans, were foreseeable victims of his fraud. We are not persuaded.

"Actual loss" is the "reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, cmt. n.3(A)(i). As a general matter, "[i]n cases where the defendant has pledged collateral to secure a fraudulent loan, . . . loss is calculated by subtracting the value of the collateral—or, if the lender has foreclosed on and sold the collateral, the amount of the sales price—from the amount of the outstanding balance on

the loan." *United States v. James*, 592 F.3d 1109, 1114 (10th Cir. 2010). Where a district court finds that the defendant did not reasonably foresee losses would be sustained by downstream lenders, the court cannot follow this general formula, but must instead consider only the original lender's loss—"the difference between the outstanding balance on the original loan and what the lender received when it sold the loan." *Id.* at 1115. However, so long as it is foreseeable that loans will be sold or repackaged, both the original lenders and downstream lenders are foreseeable victims of the fraud, and the general formula applies. *Id.* at 1117 (Lucero, J., concurring). That is so because any gains or losses sustained by the original lender will be offset by a corresponding loss or gain by the downstream lender, leaving the total loss to equal mortgage balance minus foreclosure price. *Id.* "Thus, the number of lenders involved and the amount of profit made by the original lender or any intermediate lenders is *mathematically irrelevant* to the calculation of the total loss caused by the fraud." *Id.* And, where losses to both original and successor lenders is foreseeable, the district court need not apply a more complicated formula to arrive at the same result. *See Washington*, 634 F.3d at 1184-85.

Defendant provides no persuasive reason to support his somewhat baffling argument that only the downstream lenders, not the original lenders, were foreseeable victims of his fraud. Particularly in light of Defendant's experience in the industry, the district court did not err in implicitly concluding that the losses to all lenders were reasonably foreseeable. *See id.* at 1185. With all losses being foreseeable, the court did not err in applying the general formula and simply subtracting the foreclosure sales price

-13-

from the outstanding balance on the loan. *See James*, 592 F.3d at 1114-15; *Washington*, 634 F.3d at 1184-85.

In his reply brief, Defendant further argues there was no evidence of the outstanding mortgage balance for 13400 Tahoe Drive. Because this issue was not raised in Defendant's opening brief, we do not address it on appeal. *United States v. Kimler*, 335 F.3d 1132, 1138 n.6 (10th Cir. 2003).

Defendant also makes the cursory argument that the restitution award should be reversed because it was based on an incorrect calculation of actual loss. Because we see no error in the district court's calculation of actual loss, we likewise reject this argument.

CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's conviction and sentence.