FILED
United States Court of Appeals
Tenth Circuit

August 6, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OMAR SIERRA,

Defendant-Appellant.

No. 09-4012

(D. of Utah)

(D.C. No. 2:07-CR-00093-DB-DN-2)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

Omar Sierra challenges his conviction for possessing with intent to distribute and distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). He argues the district court erred by (1) not suppressing a photo-lineup identification, and (2) concluding evidence sufficient to sustain his conviction was introduced at trial.

We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

On January 11, 2007, a confidential informant arranged to obtain methamphetamine from her supplier, "Choforo." Choforo told the informant he was unavailable to meet with her but made plans for his brother to do so. The meeting was to be at the same house where the informant had previously picked up drugs from Choforo. Police officers observed the informant as she successfully obtained the drugs and subsequently procured a search warrant for the house at which the transaction took place.

Upon executing the search warrant, officers found methamphetamine, cocaine, and a firearm. They also encountered Juan Sierra, Sierra's brother, whom they arrested.

On January 22, 2007, the informant again met with officers and a DEA agent. She recounted for them that she had previously met Choforo several times, and on occasion his brother, at the house the officers searched. She indicated those meetings had been face-to-face. The informant described Choforo as being approximately 25 years old, five feet eight inches tall, weighing 150 pounds, and having brown hair.

During the January 22 meeting, the informant was asked whether she thought she could identify Choforo and his brother from photo lineups. She was told their pictures may or may not be present in the lineups she would be shown. Neither the officers nor the DEA agent indicated to her which photos she should

choose. The informant was first shown a lineup containing pictures of Juan and seven other individuals. She identified Juan's photo as that of Choforo's brother. Next, she was shown a three-photo lineup containing a picture of Sierra. She identified the photo of Sierra as that of Choforo. The informant was then shown a lineup containing the picture of Sierra she had selected from the three-person lineup and pictures of seven other individuals. She again identified the photo of Sierra as being that of Choforo.

Subsequently, Sierra and his brother were indicted for possessing methamphetamine with intent to distribute, distributing methamphetamine, and possessing cocaine with intent to distribute. Before trial, Sierra moved to suppress the informant's identification of him as Choforo, contending the photo lineups she was shown were impermissibly suggestive and that her selections were unreliable. Sierra also argued, in the alternative, that the informant's identification should be suppressed because the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not producing the three-photo lineup to the defense, which the government claimed had not been preserved.

At the hearing on Sierra's motion to suppress, a DEA agent who attended the informant's January 22 interview provided the following testimony: (1) the informant's physical description of Choforo closely matched Sierra's appearance; (2) the address of the house from which the informant obtained methamphetamine supplied by Choforo prior to and on January 11 was the address listed on Sierra's

-3-

driver's license; (3) the informant stated she had met with Choforo concerning drugs face-to-face a couple of times per week for several months; (4) the informant indicated Choforo had a brother with whom she sometimes dealt; (5) the informant identified photos of Sierra and Juan as being those of Choforo and his brother, respectively, from the lineups she was shown; and (6) the photo lineups were not administered in accordance with DEA protocols since it was not reported that standard instructions were given, fewer than eight photos were used in one instance, the informant's attention was focused on Sierra, and copies of the photos used in the three-photo array were not kept. The DEA agent was the only person who testified at the suppression hearing.

The district court concluded the informant's identification of Sierra as Choforo was sufficiently reliable to present to a jury despite the imperfections in the photo lineup. The district court also determined *Brady* did not require suppression of the identification, because the identification was sufficiently reliable to negate any favorable effect the government's production of the three-photo lineup would have had on Sierra's defense.

At trial, the informant was either unwilling or unable to identify Sierra as Choforo.

Even without the informant's positive identification, the government produced substantial evidence implicating Sierra, including, among other testimony: (1) the informant identified the house from which she had obtained

drugs from Choforo on prior occasions; (2) the informant picked up methamphetamine from that house while cooperating with, and being observed by, police; (3) methamphetamine, cocaine, and a firearm were found at the house when officers searched it, and Sierra's brother was arrested there when the search was conducted; (4) the informant obtained drugs from Choforo about four times before she began cooperating with police; (5) the informant had occasion to meet with Choforo face-to-face when picking up drugs prior to January 11, 2007 and to have a discussion with him while seated in the living room of the house where their transactions occurred; (6) on January 22, 2007, the informant identified Sierra and Juan as Choforo and his brother, respectively; (7) the informant took time to identify Sierra as Choforo from the three-photo lineup on January 22, 2007 but was confident she selected the right picture; (8) the address of the house where officers found the contraband was listed as being Sierra's address on his driver's license, vehicle registration, and papers relating to child support; (9) Sierra's brother admitted providing methamphetamine to the confidential informant at Sierra's request in a sworn statement but later contested that admission; and (10) despite Sierra's claim he was in Mexico between December 2006 and August 2007, a traffic citation bearing his signature was issued in Utah on January 6, 2007.

The jury found Sierra guilty of possession with intent to distribute and distribution of methamphetamine, and not guilty of possession with intent to

distribute cocaine.  Sierra filed a motion for judgment of acquittal, contending evidence sufficient to identify him as Choforo and thus support the jury's verdict had not been introduced.  The district court denied the motion and sentenced Sierra to 235 months' imprisonment and 60 months' supervised release.

## II.  Discussion

On appeal, Sierra contests his conviction, arguing the district court erred by not suppressing the informant's identification of him as Choforo from the photo lineups and by ruling sufficient evidence identifying him as Choforo was presented at trial.  We address Sierra's contentions in turn.

A.  Photo Lineups

Sierra contends his identification as Choforo from the photo lineups should have been suppressed as unconstitutional because the lineups were impermissibly suggestive and their results were unreliable.  In the alternative, he argues the identification should have been suppressed because the government violated *Brady* by not producing the three-photo lineup.  We disagree with both of Sierra's arguments.

1.  *Reliability of Lineup*

We review the ultimate question of whether the identification was unreliable de novo and any factual findings made by the district court for clear error.  *See United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994).  In doing so, we consider the evidence in the light most favorable to the government,

*see United States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006), and we are "permitted to consider evidence introduced at the suppression hearing, as well as any evidence properly presented at trial." *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008) (internal quotation marks omitted).

When a defendant challenges the constitutionality of a photo lineup, the Due Process Clause requires us to engage in a two-step inquiry: (1) "[we] must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then [(2) we] must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." *Sanchez*, 24 F.3d at 1261–62. In determining whether a photo lineup was unduly suggestive, we consider a number of factors, including the number of pictures in the lineup, the manner of its presentation by law enforcement, and the details of the pictures themselves. *See id.* at 1262. "[T]he number of photographs in an array is not itself a substantive factor, but instead is a factor that merely effects the weight given to other alleged problems or irregularities in an array." *Id.*

In determining whether an impermissibly suggestive photo lineup nonetheless yielded a sufficiently reliable identification, we consider the opportunity of the witness to view the suspect at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the level of certainty the witness demonstrates when the lineup is given, and the time that has elapsed between the criminal activity alleged and

presentment of the lineup to the witness. *See United States v. Wiseman*, 172 F.3d 1196, 1210 (10th Cir. 1999). The ultimate test is whether the unduly suggestive lineup created a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).

The government does not challenge the district court's finding that the photo lineups were unduly suggestive, so we presume for purposes of our analysis that they were. Accordingly, we address only whether the informant's identification of Sierra as Choforo from the lineups was sufficiently reliable, notwithstanding the lineups' impermissibly suggestive nature.

Considering the totality of the circumstances, the district court did not err by refusing to suppress the identification. First, the informant had a number of opportunities to view Choforo engaging in criminal activity—she obtained methamphetamine from him on several occasions.

Second, the informant had the opportunity to view Choforo thoroughly and with a high degree of attention. She testified she met with him face-to-face on multiple occasions, including in the living room of his home.

Third, the description of Choforo the informant provided before viewing the photo lineups closely matched Sierra. She described Choforo as being about 25 years old, five feet eight inches tall, weighing 150 pounds, and having brown hair. According to his driver's license, Sierra was 27 years old, five feet nine inches tall, weighed 170 pounds, and had black hair.

Fourth, the informant identified Sierra as Choforo with a high level of certainty. While she took some time to consider the three-photo lineup before selecting Sierra's picture, she testified at trial that she was positive the picture she chose was that of Choforo.

Finally, a relatively short period of time had passed between when the informant last met with Choforo to receive drugs—January 11, 2007—and when she identified Sierra as Choforo—January 22, 2007. *See Archuleta v. Kerby*, 864 F.2d 709, 712 (10th Cir. 1989) (listing cases where time intervals of several months were found not to be so long as to cast doubt on the reliability of identifications).

In sum, even assuming the photo lineups were impermissibly suggestive, we conclude the informant's identification of Sierra as Choforo was sufficiently reliable to pass constitutional muster. The unduly suggestive nature of the photo lineups did not create a "very substantial likelihood of irreparable misidentification." *Manson*, 432 U.S. at 116.

### 2. Brady v. Maryland

While Sierra bases his alternative argument on *Brady*, and the district court analyzed the government's failure to produce the three-photo array in accordance with that case, we find that the standard established by *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *California v. Trombetta*, 467 U.S. 479 (1984), should have been applied here.

"As we have previously stated, the Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two distinct universes. *Brady* and its progeny address exculpatory evidence still in the government's possession. *Youngblood* and *Trombetta* govern cases in which the government no longer possesses the disputed evidence." *See United States v. Gomez*, 191 F.3d 1214, 1218 (10th Cir. 1999) (internal punctuation and citations omitted). In this case, Sierra asserts, and the government concedes, the three-photo array was not preserved.

As an initial matter, Sierra forfeited his argument under *Youngblood*. When a defendant pursues a particular theory, but fails to raise another closely related argument, the defendant has forfeited the argument. *See United States v. Lewis*, 594 F.3d 1270, 1288 (10th Cir. 2010), *cert. denied*, --- S. Ct. ---, 2010 WL 1990552 (June 14, 2010). As a result, we review only for plain error. *See id.* On plain-error review we will reverse the district-court judgment "only if (1) there is error, (2) the error is plain, (3) the error affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal alterations and quotation marks omitted).

Sierra cannot prevail under the plain error standard. At best, the three-photo array was potentially exculpatory evidence, rather than evidence that "possess[ed] an exculpatory value that was apparent before the evidence" was not preserved, *United States v. Pearl*, 324 F.3d 1210, 1215 (10th Cir. 2003) (internal

-10-

quotation marks omitted), and Sierra does not argue to the contrary. Under our caselaw, to establish the government violated the Due Process Clause by failing to preserve potentially exculpatory evidence, a defendant must show: "1) the evidence destroyed was potentially exculpatory and 2) the government acted in bad faith in destroying it." *United States v. Beckstead*, 500 F.3d 1154, 1158 (10th Cir. 2007). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58. We review for clear error the district court's determination the government did not act in bad faith. *See Beckstead*, 500 F.3d at 1158.

Sierra does not demonstrate any error, let alone plain error. He has not presented any evidence of bad faith on the part of the government—the prosecution counsel, the officers, or the DEA agent involved in this case. As a result, he cannot demonstrate a *Youngblood*/*Trombetta* violation. *See United States v. Gardner*, 244 F.3d 784, 788–89 (10th Cir. 2001).[1]

_____

[1] Even if *Brady* applied, the district court found the absence of the three-photo lineup was not prejudicial to the defense. *See United States v. Williams*, 576 F.3d 1149, 1163 (10th Cir. 2009), *cert denied*, 130 S. Ct. 1307 (2010) (listing the elements of a *Brady* violation). Because the informant's identification was sufficiently reliable, it would have been entered into evidence whether the three-photo lineup was available or not. For purposes of the *Brady* ruling, the court presumed the other two photos were dissimilar to Sierra. We agree with the district court that the other evidence of reliability made the risk of misidentification de minimis; there is no "reasonable probability that the result of the trial would have been different if the suppressed documents had been

(continued...)

In sum, the district court did not err by refusing to suppress the informant's identification of Sierra as Choforo because the three-photo lineup was not preserved.

B. Sufficiency of Evidence

Sierra also argues the district court erred by determining evidence sufficient to sustain his conviction was presented at trial. He contends the government failed to produce sufficient evidence he is the individual who completed the acts alleged in the indictment—i.e., that he is Choforo. We disagree.

We review whether evidence sufficient to sustain a conviction was introduced de novo. *See United States v. Wardell*, 591 F.3d 1279, 1286 (10th Cir. 2009). "Evidence is sufficient to support a criminal conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994). We consider the collective inferences that can be drawn from the evidence as a whole in assessing the sufficiency of the evidence. *See United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997). "We disregard only incredible testimony—i.e., testimony as to facts that the witness physically could

[1](...continued)
disclosed to the defense." *United States v. Ford*, 550 F.3d 975, 981 (10th Cir. 2008) (internal quotation marks omitted).

not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Smith*, 606 F.3d 1270, 1281 (10th Cir. 2010) (internal quotation marks omitted).

The evidence presented at trial more than adequately meets these standards. Among other things, the following evidence identified Sierra as Choforo: (1) the informant, who obtained methamphetamine from Choforo and met him face-to-face multiple times, identified Sierra's picture as Choforo; (2) the informant, who also received drugs from Choforo's brother, positively identified the brother; (3) the informant picked up methamphetamine at the address listed on Sierra's driver's license, vehicle registration, and child support documents; (4) the informant arranged to obtain methamphetamine from Choforo by picking it up from his brother on January 11, 2007; (5) after the purchase, additional drugs were found and Sierra's brother was arrested at the same address; (6) Sierra's brother initially admitted in a sworn statement that he provided drugs to the informant at Sierra's request; and (7) although Sierra denied being in the United States during January 2007, he received a traffic ticket in Utah on January 6, 2007.

Viewing the evidence presented in the light most favorable to the government, the evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Sierra and Choforo are the same person. Accordingly, we conclude the district court did not err by finding evidence sufficient to sustain

-13-

Sierra's conviction was introduced at trial—denying Sierra's motion for judgment of acquittal was not in error.

### III. Conclusion

For the foregoing reasons, we AFFIRM Sierra's conviction.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge